**TEXAS EMPLOYMENT COMMISSION, Appellant,**

v.

**MANPOWER, INC., Appellee.**

No. 3–89–193–CV.

Court of Appeals of Texas,
Austin.

Aug. 8, 1990.

Rehearing Overruled Oct. 10, 1990.

[We note that a modification to Rule 13, effective September 1, 1990, eliminates this 90–day "grace" period.]

Jim Mattox, Atty. Gen. and Susan F. Eley, Asst. Atty. Gen., Austin, for appellant.

Waggoner Carr, Austin, for appellee.

Before SHANNON, C.J., and CARROLL and ABOUSSIE, JJ.

ABOUSSIE, Justice.

This appeal arises from a tax refund suit appellee brought to recover unemployment compensation taxes paid under protest. Tex.Rev.Civ.Stat.Ann. art. 5221b–5 (1987 & Supp.1990).[1] Appellee is a corporation formerly named the Parker Pen Company (Parker Pen). During 1986, it sold all of its assets and immediately thereafter acquired by merger all of the assets of its subsidiary, Manpower, Inc.[2] Appellee argued at trial that because Parker Pen sold the entirety of its assets to a third corporation before the date it acquired Manpower, Inc., Parker Pen was a successor employer with no experience rating. Appellee thus claimed that for the remainder of 1986 it should have paid unemployment taxes at the rate Manpower, Inc. had been taxed, rather than the rate at which Parker Pen was taxed. Following a bench trial, the trial court rendered judgment for appellee. We hold that Parker Pen was an experience-rated employer on the date of acquisition, and that it could be required to pay contributions for 1986 at its assigned rate of 6.96%. We will reverse the judgment of the trial court and render judgment for appellant.

The case was tried on stipulated facts, and the trial court made findings of fact that are not challenged on appeal. The record reflects that Parker Pen Company was a corporation licensed to do business in Texas that paid contributions to the Unemployment Compensation Fund. Its experience tax rate for 1986 was 6.96%. On January 31, 1986, Parker Pen sold all of its writing instrument business to Parker Pen, U.S.A., Ltd. (an unrelated entity not a party to this cause). After the sale, Parker Pen had no assets, business, or employees in Texas. Parker Pen owned 98.5% of the stock of Manpower, Inc., a subsidiary corporation doing business in Texas and paying contributions to the Unemployment Compensation Fund. Its experience tax rate for 1986 was 2.02%. On February 1, 1986, Parker Pen acquired by merger all of the temporary help service business of Manpower, Inc. Parker Pen was the sur-

---

1. The 1985 version of this statute is the applicable version. *See* 1985 Tex.Gen. Laws, ch. 353, §§ 1, 2, at 1421.

2. Because of the similarity of the companies' names, we will summarize the principal parties.
    a. Parker Pen Company (now Manpower Inc., with no comma)
    b. Manpower, Inc. (the corporation Parker Pen acquired by merger)
    c. Manpower Inc. (the corporation resulting from the Parker Pen/Manpower, Inc., merger).

viving corporate entity after the merger and thereafter changed its name to Manpower Inc. After February 1st, the only business in which appellee engaged was the temporary help service business.

After the merger, appellant assigned appellee a new account number and assigned appellee to a new Major Group (explained below), but required appellee to pay contributions at the 6.96% rate through December 31, 1986 (thereafter, Manpower Inc.'s contribution rate was 3.54%, as computed October 1, 1986 for calendar year 1987). Appellee paid the contributions under protest.

Appellant conducted a hearing at appellee's request to determine appellee's correct contribution rate. Appellee claimed that the applicable rate was 2.02%, reflecting Manpower, Inc.'s rating. After exhausting its administrative remedies and being denied any refund, appellee filed suit in the district court for refund of those contributions it alleged were improperly assessed. Tex.Rev.Civ.Stat.Ann. art. 5221b–12(j)(2) (1987). The court rendered judgment for appellee and awarded it the difference between the contributions paid at the assessed rate of 6.96% and the contributions that would have been due had they been assessed at 2.02%.

Until an employer has earned at least four consecutive calendar quarters of compensation experience,[3] it is obliged to pay contributions at the rate of either 2.7% of all wages paid, or the rate established for the Major Group to which it is assigned, whichever is greater (appellant must establish by industry an average contribution rate for the immediate succeeding calendar year for each "Major Group" listed in the Standard Industrial Classification Manual prepared by the United States Office of Management and Budget). Article 5221b–5(b), (c)(1). However, the rate at which subsequent contributions are paid to the fund varies. The amount of contributions owed depends largely on the data comprising the employer's compensation experience record.

By means of a complex statutory formula, appellant annually computes an employer's experience tax rating for the coming year based in part, under the formula, upon its compensation experience. Contributions at this rate are paid quarterly. Under section (d) of article 5221b–5, October 1st is the date each year on which appellant calculates an employer's "experience tax rate." The rate assigned an employer takes effect on the following January 1st and remains in effect for the entire calendar year.

Under section (c)(7)(A) of article 5221b–5, when an employing unit acquires (and continues operating) all of the organization, trade, or business of another employer, the successor employer acquires the predecessor employer's record of compensation experience in addition to its business. If the successor is an experience-rated employer on the date of the acquisition, it must continue to pay contributions for the remainder of the calendar year at the assigned rate applicable to the successor on that date. However, if the successor employer is not an experience-rated employer on the date of the acquisition, then it must pay contributions until the next rate computation date at the highest rate applicable at the time of the acquisition to any predecessor employer who is a party to the acquisition. There is no immediate recomputation of a successor's experience tax rate based upon the newly acquired record of compensation experience, although that information will be used in computing the successor's experience tax rate on the next computation date.

At trial and on appeal, the parties join issue as to whether Parker Pen was an "experience-rated employer" on February 1, 1986. If so, its experience tax rate was 6.96%. The term is not defined anywhere in the Unemployment Compensation Act. The parties agree that Parker Pen had been an experience-rated employer before

---

3. An employer's compensation experience is the body of information to which appellant applies a statutory formula to derive an employer's experience tax rating. Article 5221b–5(c)(4)–(6) and (7)(B)(ii).

January 31, 1986, and that when it sold its writing instrument business, Parker Pen transferred its record of compensation experience for that business, as well. Appellee first argues, and the trial court concluded, that because Parker Pen retained no compensation experience for its writing instrument business, it was no longer an experience-rated employer on the date it acquired both Manpower, Inc.'s business and compensation experience. In effect, appellee argues that Parker Pen necessarily conveyed its experience rating along with its record of experience. Second, appellee contends, and the trial court further concluded, that the statute requiring an experience-rated successor to continue paying contributions for the balance of the year at its compensation experience tax rate does not apply to a successor that has divested itself of the business that generated the compensation experience on which the rate is based, as was the case here. Instead, presumably a successor would be treated as if it were not an experience-rated employer. In either event, appellee claims it would be taxed at the highest rate applicable to any predecessor employer that was a party to the merger, which here was Manpower, Inc. Appellee contends that because it acquired Manpower, Inc.'s compensation experience upon their merger and had no other, appellant could tax appellee only at the rate previously applicable to Manpower, Inc.

Appellant agrees that Parker Pen's compensation experience was transferred to Parker Pen, U.S.A., Ltd., and further agrees that after the merger, appellee's compensation experience was comprised solely of the compensation experience it acquired from Manpower, Inc. However, appellant argues by four points of error that Parker Pen retained its *compensation experience tax rate* for all of 1986. Therefore, it concludes that Parker Pen remained an experience-rated employer and held this status on the date it acquired Manpower, Inc. Thus, it properly continued to pay contributions for the year at its previously assigned experience tax rate of 6.96%. Appellant insists that there is no provision in the statute for any other result. Appellee has failed to direct us to any provision or other authority in support of its position.

Appellee argues that it is not logical to interpret the statute to mean that although an employer's compensation experience may be transferred with its other assets to another employer, it nevertheless retains its tax rating. It further suggests that it is illogical to interpret the statute to mean that appellee's only compensation experience is as a temporary help service business, but that it may be taxed as if it remained a writing instrument business.

This Court held in *Tiffany Stone & Brick Co. v. State,* 588 S.W.2d 607, 611 (Tex.Civ.App.1979, writ ref'd n.r.e.), that when two employers merge, "[t]he statute [article 5221b–5 (c)(7)(A)] ... is explicit in holding the successor employing unit to rates existing for the successor on the date of merger to the end of the calendar year in which merger occurs." Appellee, however, claims that its situation differs because it transferred its compensation experience to Parker Pen, U.S.A., Ltd., before the merger with Manpower, Inc.

As appellant argues, appellee ignores article 5221b–5(d). The general statutory scheme draws a distinction between "compensation experience" and "experience tax rates." The scheme provides generally that an employer's compensation experience may be transferred, but section (d) provides that an employer's experience-based tax rate remains the same throughout a calendar year. Appellee argues that section (d) does not state that an employer must pay a particular rate if it no longer possesses the business from which the experience was generated or the compensation experience upon which the rate was computed the previous October 1st. We disagree. The statute quite clearly states that an employer's experience tax rate is to be assessed on October 1st, is to take effect the following January 1st, and is to remain in effect for the entire year. It does not provide that the rate will change or that its application will cease simply because the factors from which the rate is derived change during the calendar year.

Appellant is obligated by statute to compute and to assign tax rates each year. In doing so, it is directed to consider a number of factors, which together comprise an employer's compensation experience. Each employer's compensation experience may change in a number of ways: when the employer merges with another company, when former employees file claims more frequently, or when the employer enters another industry, as examples. The article contemplates that an employer's contribution experience will grow and change and provides for such. However, the article does not provide that a change in an employer's compensation experience during the year will affect the assigned annual rate until the next rate calculation date. The rates change only once per year, and an experience-rated employer retains its rate throughout the year. However, when the rates are recalculated, appellant applies the formula to all the changes in the employer's compensation experience that occurred since the last calculation. Thus, in 1987, appellee's rates were significantly lower than in 1986, owing to its changed compensation history, although apparently not as low as the subsidiary's 1986 rate.

■■■ We hold that an "experience-rated employer" is one to whom appellant has assigned an experience rating for the time period in question, based upon the employer's compensation experience on the computation date, and an employer does not cease to be an experience-rated employer when it transfers to another employer its compensation experience. We further hold that appellee was an experience-rated employer on February 1, 1986. Finally, we hold that article 5221b–5(c)(7)(A) applies to an experience-rated employer even though it has sold the business that generated the compensation experience on which the rate was calculated.

The first sentence of article 5221b–5(c)(7)(A) provides that a successor employer acquires the compensation experience of its predecessor. The parties agree that appellee retained no part of its previous compensation experience, and our opinion should not be interpreted as holding other-wise. We hold only that appellee was subject to paying contributions in accordance with the second sentence of the statute at its assigned compensation experience rate until the rate was recomputed and took effect.

Appellee suggests that this result is unfair. When Parker Pen elected to cease its writing instrument business and to acquire a temporary help service business, appellant's contribution rate was substantially higher for the remainder of 1986 than other temporary help service businesses due to the fact that its contribution rate was based on Parker Pen's writing instrument business compensation experience. Parker Pen made an intentional decision to remain as the surviving corporation. It also made the decision to enter the temporary help service field and acquire a business. Presumably, it did so because it viewed the venture as a good business decision. Appellee elected not to establish a new business organization or corporation that might have the status under the act as a new employer without an established experience rating. It does not claim to be a new employer; neither did it apply to cease being an employer. We fail to see how the statute operates in an unfair manner.

■■■ Although we do not think that the statute is unclear, where the meaning of a statutory provision is unclear, in doubt, or ambiguous, we will place great weight upon the interpretation provided by the agency administering the statute. *Calvert v. Kadane*, 427 S.W.2d 605, 608 (Tex.1968); *Direlco, Inc. v. Bullock*, 711 S.W.2d 360, 363 (Tex.App.1986, writ ref'd n.r.e.). Here, the agency has determined that the statute provides that "experience-rated employer" refers to an employer that has been assigned a particular contribution rate. We think that this determination was correct.

The judgment of the trial court is reversed and judgment is rendered that appellee take nothing.