**TEXAS EMPLOYMENT COMMISSION,**
**Appellant,**

v.

**BEN HOGAN COMPANY, Appellee.**

No. 3–92–496–CV.

Court of Appeals of Texas,
Austin.

May 19, 1993.
Rehearing Overruled June 30, 1993.

Dan Morales, Atty. Gen., Susan F. Eley, Asst. Atty. Gen., Austin, for appellant.

Joseph W. Spence, Thomas F. Harkins, Jr., Gandy Michener Swindle & Whitaker, L.L.P., Fort Worth, for appellee.

POWERS, KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

The Texas Employment Commission ("TEC") appeals from a district-court judgment requiring it to reimburse Ben Hogan Company ("Hogan" or "the company") for unemployment compensation contributions made to TEC in excess of the applicable statutory rate. Following a bench trial, the court rendered judgment against TEC and awarded Hogan actual damages of $274,676.16, plus postjudgment interest.

By six points of error, TEC complains of (1) the trial court's conclusion that a 1988 transaction between two corporations involving all the assets of Hogan constituted an "acquisition," and (2) the trial court's award of postjudgment interest. We will affirm the trial-court judgment.

## THE STATUTORY SCHEME

Under the Texas Unemployment Compensation Act (the "Act"), Tex.Rev.Civ. Stat.Ann. art. 5221b–1 to 5221b–24 (West 1987 & Supp.1993),[1] until an employer has earned at least four consecutive calendar quarters of compensation experience,[2] it is required to pay contributions to the state Unemployment Compensation Fund at either the median rate of 2.7 percent of all wages paid, Act art. 5221b–5(b), or at the rate established for a particular industry, whichever is greater.[3] Act art. 5221b–5(c)(1). Following the initial development of compensation experience, the employer's experience tax rating is adjusted annually based on changes in that compensation experience. Numerous factors may effect changes in an employer's compensation experience, including the frequency of claims filed by former employees, mergers by the employer with other companies, and the employer's entry into other industries. Act art. 5221b–5(c).

On October 1st of each year, TEC computes each employer's experience tax rating for the coming year by applying a complex statutory formula to the employer's compensation experience. This rating takes effect on the following January 1st and remains in effect for the calendar year.

Formerly, under article 5221b–5(c)(7)(A), when an "employing unit" acquired and continued to operate all of the organization, trade, or business of an "employer," the successor employing unit acquired the predecessor employer's compensation experience rather than enjoying the "new employer" rate of 2.7 percent under article 5221b–5(b).[4] However, in 1989, article 5221b–5(c)(7)(A) was amended to confine its application to transfers involving any relationship between shareholders, officers, or other interest-holders of the acquiring business and the selling business. Act art. 5221b–5(c)(7)(A)(iii).[5] The amendment also permitted businesses that had been adversely affected by former article 5221b–5(c)(7)(A) (e.g., employers who had succeeded to a predecessor's existing experience rate greater than 2.7 percent) to apply to TEC in writing between September 1 and December 31, 1989, to have their experience rates recalculated for 1990 in light of the amendment. Act art. 5221b–5(c)(7)(A)(iv). Hogan's efforts to secure a recalculation engendered the dispute now before us.

## THE CONTROVERSY

The parties have stipulated to the facts of this case. Ben Hogan, a professional

---

1. All statutory citations refer to this Act unless otherwise noted.

2. An employer's compensation experience is the body of information to which TEC applies a statutory formula to derive an employer's experience tax rating. *Texas Employment Comm'n v. Manpower, Inc.*, 795 S.W.2d 261, 263 n. 1 (Tex.App.—Austin 1990, no writ).

3. TEC establishes average contribution rates for each particular industry listed in the Standard Industrial Classification Manual prepared by the United States Office of Management and Budget. These rates are determined on an industry-by-industry basis by averaging the contribution rates paid by employers in each industry over the preceding fiscal year ending September 30. Act art. 5221b–5(c)(1).

4. The Act defines "employing unit" as "any individual or type of organization, including but not limited to ... [a] corporation" that employs at least one individual performing services within Texas. Act art. 5221b–17(e).

The Act includes within its definition of "employer" an "individual or employing unit which acquire[s] the organization, trade, or business, or substantially all of the assets thereof, of another ... employer." Act art. 5221b–17(f)(2).

5. *See* Act of May 28, 1989, 71st Leg., R.S., ch. 436, § 1, 1989 Tex.Gen.Laws 1583, 1583. The 1989 amendment refers to section 7(c)(7)(A), using a numbering scheme different from the version codified at Tex.Rev.Civ.Stat.Ann. art. 5221b–5(c) (West Supp.1993). What was referred to in the 1989 session laws as section 7(c)(7)(A) of the Act became article 5221b–5(c)(7)(A) through codification. We shall refer to the codified numbering scheme rather than to that used in the 1989 session laws.

294

golfer, founded the Ben Hogan Company in 1953 to manufacture golf equipment. The company was incorporated in Texas in 1960. In the early 1960s, Mr. Hogan sold all of the stock of the company to AMF Corporation, which operated Hogan as one of its subsidiaries. In the early 1980s, Minstar, Inc. ("Minstar"), a Delaware corporation, purchased AMF. Minstar owned all of the issued and outstanding stock of Min–V Corporation ("Min–V"), which owned all of the issued and outstanding capital stock of Hogan.

In May 1988, Cosmo World Corporation ("Cosmo"), a California corporation, purchased from Minstar all of the shares of Min–V for approximately $52 million, thereby becoming the owner of all of Hogan's assets, including its trade name, goodwill, reputation, patents, equipment, business, property, and stock. With the purchase of Hogan, Cosmo installed its own directors and officers to continue the operations and business of the company. Before the purchase, Cosmo had no shareholder, officer, or other owner of a legal or equitable interest in its corporation in common with Minstar or Min–V, nor were any of the respective shareholders, officers, or other owners of the three businesses related by blood or marriage.

In November 1989, Hogan submitted the proper application, pursuant to article 5221b–5(c)(7)(A)(iv), requesting recalculation of the experience tax rate to be applied to the company for 1990. In February 1990, TEC mailed Hogan a tax rate notice that indicated a general tax rate of 6 percent, with an effective rate of 6.29 percent; the notice made no reference to Hogan's request for a recalculation. At Hogan's further request, TEC held a hearing for the purpose of considering Hogan's position: that because Cosmo's purchase of Hogan was a bona fide acquisition involving two wholly unrelated corporations, the new subparagraph (iii) precluded TEC from applying subparagraph (i) to carry forward the company's previous experience tax rate. Hogan therefore sought the new employer tax rate of 2.7 percent. TEC refused to recalculate Hogan's experience rate, taking the position that the change in ownership of the company did not constitute an "acquisition" because Hogan retained the same corporate identity before and after the transfer.

In August 1990, Hogan sought a refund or adjustment under the Act of all tax contributions made in excess of the 2.7 percent tax rate. After TEC denied its request, Hogan brought this suit on December 17, 1990. See Act art. 5221b–12(j)(2) (West 1987). In a bench trial, the court found that Cosmo's purchase of Hogan's assets, patents, equipment, business, and property constituted an "acquisition" and awarded the company a refund of $274,676.16, plus postjudgment interest. TEC appeals that judgment.

## ANALYSIS

### Acquisition

In its first five points of error, TEC contends that the trial court erred in concluding that Cosmo's purchase of Hogan's stock constituted an "acquisition," making the company eligible for the 2.7 percent tax rate as a new employer. Because TEC and Hogan have stipulated to all facts, the question on appeal is limited to whether the trial court properly applied the law to the undisputed facts. *State Bar of Tex. v. Faubion*, 821 S.W.2d 203, 205 (Tex.App.—Houston [14th Dist.] 1991, writ denied).

TEC argues that because Hogan has continued to exist as the same corporate entity before and after Minstar's May 1988 transfer of all its stock to Cosmo, such transfer was not an "acquisition"; hence, there is no new employer qualified to be taxed at the 2.7 percent rate under article 5221b–5(b). The Act does not define the terms "acquire" and "acquisition." Subparagraphs (i) and (iii) provide in pertinent part:

Art. 5221b–5. Contributions.

\* \* \* \* \* \*

(c) Experience rating:

\* \* \* \* \* \*

(7)(A)(i) An employing unit that acquires all of the organization, trade, or business of an employer and that continues operation of the organization, trade,

or business acquires the compensation experience of the predecessor employer as provided by this Paragraph (A).

\* \* \* \* \* \*

(iii) The Commission shall apply Subparagraph (i) of this paragraph only if, as of the date of the acquisition, a shareholder, officer, or other owner of a legal or equitable interest in the employing unit that is transferring the organization, trade, or business, or the spouse or a person within the first degree of consanguinity or affinity ... of such an individual, is a shareholder, officer, or other owner of a legal or equitable interest in the acquiring successor employing unit, or holds an option to purchase such an interest.

■ One of the stipulated facts before us is that Cosmo had no subparagraph (iii) ties to either Hogan, Minstar, or Min–V at the time of the transaction, making subparagraph (i) inapplicable. Hogan argues that after Cosmo purchased all of Hogan's assets, it was entitled to the 2.7 percent tax rate as a new employer. TEC maintains that Hogan is not entitled to treatment as a new employer because there has been no "acquisition." We reject this argument.

Article 5221b–5(c)(7)(A)(i) reflects the legislature's concern that companies were attempting to circumvent high compensation rates by reorganizing their businesses solely to obtain the favorable new-business tax rate of 2.7 percent. To close the "loophole," the legislature initially provided that all employing units that acquired other employers' businesses and continued their operations were deemed to have acquired their predecessors' compensation experience. However, the legislature's subsequent 1989 addition of subparagraph (iii) relaxed that provision, so that it now applies *only* where the acquisition involves businesses that are in some manner "related." In those instances, there is a stronger presumption that the objective of the acquisition is to reduce tax liability. By the addition of subparagraph (iii), the legislature removed the burden of acquiring the predecessor's compensation rate if there is a bona fide transfer, where no relationships of identity, affinity, or consanguinity exist between the two parties involved in the transaction. Cosmo's purchase of Hogan was a $52 million acquisition involving no common directors, officers, or shareholders, or other subparagraph (iii) ties, and it resulted in the complete replacement of all directors and officers then managing the company.

TEC attempts to avoid the amended policy of article 5221b–5(c)(7)(A) by denying that this transfer was an "acquisition." Nothing in the historical background of the Act supports TEC's argument that a company that maintains the same corporate charter after its purchase cannot have been the subject of an acquisition. In fact, the statute has been amended to remove the implication that an acquisition occurs only through a change in legal identity or form. In 1941, subdivision (c)(7) of the Act provided that "two or more employing units which are parties to or the subject of a merger, consolidation, or other form of reorganization effecting a *change in legal identity* or form" would be considered a single employing unit for the purposes of calculating compensation experience if various conditions were met. Texas Unemployment Compensation Act, Act of Mar. 27, 1941, 47th Leg., R.S., ch. 83, § 1, 1941 Tex.Gen.Laws 101, 104 (emphasis added). However, in 1949 the "change in legal identity" language was eliminated. Texas Unemployment Compensation Act, Act of May 3, 1949, 51st Leg., R.S., ch. 148, § 5D, 1949 Tex.Gen.Laws 282, 293. Subsequent amendments to article 5221b–5(c)(7) have not reinstated any suggestion that a "change in legal identity" must accompany an acquisition. We construe the current language of subdivision (c)(7) to mean that an acquisition need not be attended by a change in legal identity.

Further, we find no merit in TEC's contention that Cosmo's purchase of Min–V's stock was not an acquisition of the "organization, trade or business" of Hogan. Because the Act provides no statutory definition of the terms "acquire" or "acquisition," we must apply the ordinary meaning of those terms in construing their meaning

within the Act. *Hopkins v. Spring Indep. Sch. Dist.*, 736 S.W.2d 617, 619 (Tex.1987). We must give the statute a reasonable interpretation, and it is assumed that the ordinary meaning of the words used expresses the intent of the legislature. *Texas Employment Comm'n v. City of Houston*, 616 S.W.2d 255, 257–58 (Tex.Civ.App.—Houston [1st Dist.] 1981, writ ref'd).

According to *Black's Law Dictionary* 24 (6th ed. 1990), to "acquire" means "[t]o gain by any means ... to obtain by ... purchase; receive or gain in whatever manner; come to have ... [t]o gain ownership of"; similarly, "acquisition" means "[t]he act of becoming the owner of certain property; the act by which one acquires or procures the property in anything." According to *Webster's Ninth New Collegiate Dictionary* (1987), to "acquire" means "to come into possession or control of, often by unspecified means," and "acquisition" is simply "the act of acquiring." Cosmo's purchase of all Minstar's stock and subsequent installation of its own directors and officers resulted in new ownership and new control of Hogan. This transaction unquestionably involved an "acquisition" within the ordinary meaning of that term.

Because Cosmo's purchase of Min–V's stock was an acquisition of the assets of Hogan, and because there were no related shareholders, officers, or owners of the acquiring or selling businesses that would require Cosmo to succeed to the compensation experience of the predecessor employer, we hold that after the transfer, Hogan was entitled to the 2.7 percent compensation rate established by article 5221b–5(b). Therefore, we overrule TEC's points of error one through five.

### Postjudgment Interest

■ In its sixth point of error, TEC contends that the trial court improperly awarded Hogan postjudgment interest. The Act provides that plaintiffs may "commence an action ... against the Commission for a refund of the contributions and/or penalties which the Commission refused to refund" and that "such recovery, if any, shall be *without interest.*" Act art. 5221b–12(j)(2) (emphasis added). TEC maintains that this provision precludes the award of postjudgment interest. Hogan responds that the award merely complied with the statutory requirement that "all judgments, together with taxable court costs, of the courts of this state earn interest, compounded annually." Tex.Rev.Civ.Stat.Ann. art. 5069–1.05, § 2 (West Supp.1993); *see also State v. Tennessee Gas Transmission Co.*, 289 S.W.2d 309, 311–12 (Tex.Civ. App.—Austin 1956, writ ref'd n.r.e.) (state, as judgment debtor, is subject to statutory requirement that all judgments bear interest).

TEC avers that article 5221b–12(j)(2) conflicts with article 5069–1.05, section 2, and that because the former is a more specific statute, it should control. Because we discern no conflict between the two statutes, we reject TEC's argument. The manifest purpose of article 5221b–12(j) is to provide various means by which an employing unit that has overpaid contributions or penalties may be compensated for the overpayment. In providing these means, the legislature took pains to clarify that such compensation, whether secured by an adjustment, a refund, or a lawsuit, would result only in a credit for or the return of those monies overpaid, but would not include any interest as compensation for the lost use of those monies during the time of the unauthorized or improper retention of the same. Consequently, an employing unit bringing suit pursuant to article 5221b–12(j)(2) may recover as damages only the actual amount of overpayment, but not interest on that amount running from the time of the overpayment.

Because article 5221b–12(j)(2) addresses only the amount of compensation an overpaying employing unit may recover as damages, it cannot be construed to preclude application of article 5069–1.05, section 2 once judgment has been rendered in favor of an employing unit. We, therefore, hold that the trial court's award to Hogan of postjudgment interest under article 5069–1.05, section 2 was proper.[6] Consequently, we overrule TEC's sixth point of error.

---

**6.** To the extent that our holding in this case conflicts with *State v. El Paso Natural Gas Co.,*

## CONCLUSION

The trial court's judgment is affirmed.

300 S.W.2d 170 (Tex.Civ.App.—Austin 1957, no writ), we overrule that earlier case.