**Affirmed and Memorandum Opinion filed July 30, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-18-00627-CV

### G&A OUTSOURCING, INC.; G&A OUTSOURCING II, L.L.C.; AND G&A OUTSOURCING III, L.L.C., Appellants

### V.

### TEXAS WORKFORCE COMMISSION, Appellee

**On Appeal from the 98th District Court**
**Travis County, Texas**
**Trial Court Cause No. D-1-GN-14-005431**

## M E M O R A N D U M   O P I N I O N

G&A Outsourcing, Inc., G&A Outsourcing II, L.L.C., and G&A Outsourcing III, L.L.C. (collectively, "Appellants") appeal the decision of the district court, which affirmed the Texas Workforce Commission's ("TWC") denial of Appellants' request for an unemployment tax refund. TWC denied the refund request after rejecting Appellants' applications for a partial transfer of compensation experience under the relevant Labor Code provisions. For the

reasons below, we affirm.

## BACKGROUND

### *The Texas Unemployment Compensation Act and Transfers of Compensation Experience*

The Texas Unemployment Compensation Act ("TUCA") levies an unemployment tax on employers to fund Texas's unemployment benefits. *See* Tex. Lab. Code Ann. § 204.002 (Vernon 2015). The applicable tax rate is based in part on an employer's "compensation experience," which measures how frequently the employer's former employees collect unemployment benefits. *See id.* §§ 204.041-.044 (Vernon 2015). Employers whose former employees generate more claims for unemployment benefits generally have a higher compensation experience rating and a higher tax rate. *See G&A Outsourcing IV, L.L.C. v. Tex. Workforce Comm'n*, No. 03-16-00752-CV, 2017 WL 3585219, at *1 (Tex. App.—Austin Aug. 17, 2017, no pet.) (mem. op.).

Compensation experience is calculated annually based on an employer's "benefit ratio:" its chargebacks (the amount of unemployment benefits paid to former employees) divided by its taxable wages over the preceding three-year period. Tex. Lab. Code Ann. §§ 204.021 (Vernon 2015), .044. When an employer transfers all or part of its business to another employer with whom it shares common ownership, section 204.083 requires the employer to also transfer its compensation experience:

> The transfer of the predecessor employer's compensation experience to the successor employer is required if the predecessor employing unit transfers, through any means, all or part of the organization, trade, or business, to the successor employer and there is substantially common ownership of the entities.

*Id.* § 204.083 (Vernon 2015).

2

Following a section 204.083 transfer of compensation experience, two sections govern the computation of the successor employer's tax rate:

- Section 204.0851 provides the general scheme to calculate the tax rate of successor employers following section 204.083 transfers. *See id*. § 204.0851 (Vernon 2015). Rates calculated pursuant to section 204.0851 count the predecessor employer's compensation experience simultaneously against both the predecessor and successor employers. *See id*.

- Section 204.085 calculates the tax rate for successor employers following certain partial acquisitions "if the commission determines that the part of the organization, trade, or business transferred is definitely identifiable and segregable and that compensation experience can be specifically attributed to that part of the organization, trade, or business . . . ." Act of June 18, 2005, 79th Leg., R.S., ch. 1315, § 6, 2005 Tex. Gen. Laws 4123, 4125 (amended 2015) (current version at Tex. Lab. Code § 204.085).[1] If these requirements are met, only a portion of the predecessor employer's compensation experience is counted against the successor — the portion attributable to the business the successor employer acquires. *See id*.

With this statutory scheme in mind, we turn to the facts of the underlying dispute.

***Facts and Procedural History***

Appellants G&A Outsourcing, Inc. ("G&A"), G&A Outsourcing II, L.L.C. ("G&A II"), and G&A Outsourcing III, L.L.C. ("G&A III") are commonly-owned professional employment organizations ("PEOs"). PEOs are retained by employers to provide payroll administration and other services necessary to running a business. PEOs issue payroll checks to the employers' employees and remit the unemployment taxes due on the employers' payrolls.

G&A provided PEO services to approximately 187 employers. In December

---

[1] Our analysis relies on the prior version of section 204.085, which was in effect when Appellants filed their partial transfer applications.

2010, G&A transferred 79 employers to G&A II and 55 employers to G&A III. The parties do not dispute that this transfer required a full transfer of G&A's compensation experience under section 204.083.

In August 2011, Appellants filed applications under section 204.085 for a partial transfer of G&A's compensation experience to G&A II and G&A III based on the employers the successor entities acquired. After TWC pointed out inaccuracies in Appellants' data, Appellants filed amended versions of their partial transfer applications. TWC denied Appellants' amended applications.

Appellants sought a Rule 13 administrative hearing to contest the applications' denials. In its written decision following the hearing, TWC concluded the applications were properly denied because Appellants "submitted inaccurate data."

Appellants paid the taxes due based on TWC's denial of the partial transfer applications and requested a refund of the alleged overpayment. TWC denied the refund, citing its Rule 13 decision. Appellants filed the underlying action to recover the alleged overpayment.

Appellants filed in the trial court a motion to compel the deposition of a TWC representative. The trial court signed an order denying Appellants' motion to compel. The parties proceeded to a bench trial in March 2018 and the trial court signed a final judgment concluding TWC properly denied Appellants' request for a refund of unemployment taxes.

The trial court entered findings of fact and conclusions of law, which it amended in June 2018. Appellants timely appealed to the Third Court of Appeals and their case was transferred to this court by Texas Supreme Court Transfer

Order.[2]

In three issues, Appellants assert the trial court erred (1) in its interpretation and application of the statutes governing G&A II's and G&A III's tax rates; (2) by refusing to admit into evidence any part of TWC's written decision following the Rule 13 hearing; and (3) by denying Appellants' motion to compel the deposition of a TWC representative.

## I.      Statutory Interpretation

### A.      Standard of Review and Governing Law

We review questions of statutory construction *de novo* and our primary objective is to give effect to the Legislature's intent as expressed in the language of the statute. *R.R. Comm'n of Tex. v. Tex. Citizens for a Safe Future & Clear Water*, 336 S.W.3d 619, 624 (Tex. 2011); *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631 (Tex. 2008). We discern legislative intent from the statute as a whole rather than from isolated portions. *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008). We consider the entire act, its nature and object, and the consequences that would follow from each construction. *Osterberg v. Peca*, 12 S.W.3d 31, 38 (Tex. 2000). "Absent an absurd result, we rely on the plain meaning of the text unless a different meaning is supplied by legislative definition or is apparent from the context." *Risk Mgmt. Strategies, Inc. v. Tex. Workforce Comm'n*, 464 S.W.3d 864, 868 (Tex. App.—Austin 2015, pet. dism'd).

If there is vagueness, ambiguity, or room for policy determinations in a statute, we normally defer to the agency's interpretation so long as the construction

---

[2] Because of the transfer, we must decide the case in accordance with the precedent of the Third Court of Appeals if our decision otherwise would have been inconsistent with that court's precedent. *See* Tex. R. App. P. 41.3.

is reasonable and does not conflict with the statute's language. *See TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 438 (Tex. 2011); *R.R. Comm'n of Tex.*, 336 S.W.3d at 624. But "[w]e defer only to the extent that the agency's interpretation is reasonable, and no deference is due where an agency's interpretation fails to follow the clear, unambiguous language of its own regulations." *TGS-NOPEC Geophysical Co.*, 340 S.W.3d at 438.

## B. Application

Appellants assert the trial court failed to correctly apply sections 204.085 and 204.0851 to determine G&A II's and G&A III's tax rates.

In its amended findings of fact and conclusions of law, the trial court concluded TWC correctly calculated G&A II's and G&A III's tax rates under section 204.0851, which states, in relevant part:

> For a transfer of compensation experience required by Section 204.083 ***other than a transfer described by Section 204.085(a)***, the contribution rate shall be computed as provided by this section.

Tex. Lab. Code Ann. § 204.0851(a) (emphasis added). Pointing to the emphasized statement above, Appellants argue the trial court's analysis first should have considered the application of section 204.085. Appellants' argument then focuses on the following emphasized statements in section 204.085:

> (a) ***Except as provided by Subsection (d)***, in the case of a partial acquisition for which the transfer of compensation experience is required under Section 204.083, if the commission determines that the part of the organization, trade, or business transferred is definitely identifiable and segregable and that compensation experience can be specifically attributed to that part of the organization, trade, or business, the contribution rate of the successor must be computed:
>
> > (1) based on the successor employing unit's experience for the part of the organization, trade, or business that was not acquired by the transfer; and

6

(2) as provided by this section for the part of the organization, trade, or business acquired through the transfer.

*          *          *

(d) *If the commission determines that the transfer was accomplished solely or primarily for the purpose of obtaining a lower contribution rate, the successor's contribution rate must be determined under Section 204.006*.

Act of June 18, 2005, 79th Leg., R.S., ch. 1315, § 6, 2005 Tex. Gen. Laws 4123, 4125 (amended 2015) (emphasis added). Addressing subsection (d), Appellants argue the transfers to G&A II and G&A III were accomplished "solely or primarily for the purpose of obtaining a lower contribution rate," warranting an application of the tax rates in section 204.006. Appellants support this argument with reference to:

1.    Testimony from John Allen, Appellants' founder, president, and chief operating officer. Allen testified that the "primary purpose" for the transfers "was to lower the tax rates of G&A II and III."

2.    The statement in TWC's written decision following the Rule 13 hearing (which the trial court excluded from evidence) that described Appellants' transfers as "the essence of manipulating the experience rating system by minimizing the impact of chargebacks to the predecessor's or successor's tax account."

Arguing in favor of the trial court's analysis, TWC asserts unemployment tax rates are calculated under section 204.085(d) *only if* the requirements of section 204.085(a) are met — namely, the application for a partial transfer of compensation experience. Pointing out that Appellants' section 204.085(a) partial transfer applications were denied (a conclusion Appellants do not challenge on appeal), TWC argues that it was not required to reach a section 204.085(d) determination.

Guided by the statutes' plain language and their interplay, as well as the overall aims of TUCA, we reject Appellants' interpretation of sections 204.085 and

204.0851.

Section 204.0851 sets out the general tax rate formulas following "a transfer of compensation experience required under 204.083[.]" By its terms, the only transfers excluded from section 204.0851's general scheme are those transfers "described by section 204.085(a)." *See* Tex. Lab. Code Ann. § 204.0851(a). Read in conjunction with section 204.085(a), section 204.0851 excepts only those transfers TWC "determines" are "definitely identifiable and segregable." *See id*.; Act of June 18, 2005, 79th Leg., R.S., ch. 1315, § 6, 2005 Tex. Gen. Laws 4123, 4125 (amended 2015). Appellants' reading of these statutes — which jumps straight to section 204.085(d) without considering whether the requirements of subsection (a) are met — ignores that section 204.0851 excludes from its general tax rate formulas *only* those transfers that meet section 204.085(a)'s requirements. Appellants' interpretation therefore is contrary to the plain language of sections 204.085 and 204.0851.

Moreover, Appellants' interpretation is not supported by the policies underlying TUCA. TUCA seeks to prevent unemployment and "should be construed so as to reward and encourage employers providing stable employment." *Berry Contracting, L.P. v. Tex. Workforce Comm'n*, No. 03-03-00510-CV, 2004 WL 1114569, at *4 (Tex. App.—Austin May 20, 2004, pet. denied) (mem. op.) (citing *Rowan Oil Co. v. Tex. Emp't Comm'n*, 263 S.W.2d 140, 144 (Tex. 1953)). Historically, when an employer acquired all or part of the workforce of another employer, TUCA did not require the compensation experience to transfer to the successor employer. *See State v. Williams & Mettle Co.*, 888 S.W.2d 162, 163 (Tex. App.—Austin 1994, writ denied). Accordingly, some employers acquired new business for the sole purpose of paying employment taxes under the lower "new employer" rate. *Id*.; *see also* Tex. Lab. Code Ann. § 204.006 (Vernon 2015).

To curb this practice, the Legislature adopted a provision requiring employers to transfer compensation experience under certain circumstances. *See* Act of May 17, 1985, 69th Leg., R.S., ch. 353, §§ 1, 2, 1985 Tex. Gen. Laws 1421, 1421-23 (amended 2005) (current version at Tex. Lab. Code Ann. § 204.083); *see also G&A Outsourcing IV, L.L.C.*, 2017 WL 3585219, at *1.

But Appellants' interpretation of sections 204.085 and 204.0851 conflicts with this intent. Under Appellants' interpretation, any successor employer could receive the lower "new employer" tax rate merely by indicating that the transfer in question was "accomplished solely or primarily for the purpose of obtaining a lower contribution rate." *See* Act of June 18, 2005, 79th Leg., R.S., ch. 1315, § 6, 2005 Tex. Gen. Laws 4123, 4125 (amended 2015). By evidencing this intent, an employer would be able to bypass the tax rate formulas in sections 204.085(a) and 204.0851, rendering these provisions useless. *See also Strasburger Enters., Inc. v. TDGT Ltd. P'ship*, 110 S.W.3d 566, 570 (Tex. App.—Austin 2003, no pet.) ("Construction of a statute which would make a provision a useless appendage is not favored by law."). We decline to adopt an interpretation that would work against TUCA's aims with respect to the transfer of compensation experience among employers.

We overrule Appellant's first issue.

## II.     The Trial Court's *De Novo* Review

Challenging the trial court's application of a *de novo* standard of review, Appellants assert they should have been permitted to introduce into evidence part of TWC's written decision rendered after the Rule 13 administrative hearing. Specifically, Appellants sought to introduce the following statement addressing the intent behind Appellants' transfers:

> We believe that this is the essence of manipulating the experience rating system by minimizing the impact of chargebacks to the predecessor's or successor's tax account. We so hold.

Appellants argue this determination "without question invokes § 204.085(d)" and entitles them to a tax rate under subsection (d).

As stated above, we reject Appellants' statutory interpretation and their claim to a section 204.085(d) tax rate on grounds that their transfers were "accomplished solely or primarily for the purpose of obtaining a lower contribution rate." *See* Act of June 18, 2005, 79th Leg., R.S., ch. 1315, § 6, 2005 Tex. Gen. Laws 4123, 4125 (amended 2015). Therefore, the trial court's exclusion of TWC's written decision and its statement regarding Appellants' intent does not give rise to reversible error. *See* Tex. R. App. P. 44.1(a).

We overrule Appellants' second issue.

## III.     Appellants' Motion to Compel

In their third issue, Appellants argue the trial court abused its discretion by denying Appellants' motion to compel the deposition of a TWC representative. Appellants argue the trial court's decision left them in a "catch-22" wherein they were prohibited from admitting determinations made in the Rule 13 hearing but also were prohibited from obtaining new discovery.

The scope of discovery generally is within the trial court's discretion. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam). When the trial court denies a motion to compel discovery, the ruling is reviewed under an abuse of discretion standard. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 661 (Tex. 2009). A trial court abuses its discretion "when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id*.

10

A party typically is entitled to obtain discovery on any matter that is not privileged and is relevant to the subject matter of the pending action and appears to be reasonably calculated to lead to the discovery of admissible evidence. *See* Tex. R. Civ. P. 192.3(a). In addition to determining whether there was an abuse of discretion, the court also must determine whether the alleged error probably caused the rendition of an improper judgment. *Ford Motor Co.*, 279 S.W.3d at 666 (citing Tex. R. App. P. 44.1(a)). Error is harmful if it "'probably caused the rendition of an improper judgment'" or "'probably prevented the appellant from properly presenting the case to the court of appeals.'" *Id.* (quoting Tex. R. App. P. 44.1(a)).

In their motion to compel, Appellants sought discovery with respect to the following categories of information:

1. TWC's conclusion that Appellants were "attempting to manipulate the experience rating system."
2. The determination of tax rates under section 204.085(d).
3. Appellants' partial transfer applications and TWC's bases for the applications' denials.
4. Appellants' application for a refund and TWC's basis for its denial.
5. TWC's legal conclusions made with respect to sections 204.083, 204.085, and 204.0851.
6. TWC's answers to "all written discovery . . . in this case."

Applying the legal standards discussed above, we conclude reversal is not warranted because no harm has been shown.

Because we reject Appellants' interpretation of sections 204.085 and 204.0851, the discovery sought in categories 1 and 2 does not warrant reversing the trial court's denial of Appellants' motion to compel. Appellants' inability to depose a TWC representative with respect to these topics did not cause the rendition of an improper judgment and did not prevent Appellants from properly

11

presenting their case on appeal. *See* Tex. R. App. P. 44.1(a); *Ford Motor Co.*, 279 S.W.3d at 666.

The discovery sought in categories 3, 4, and 5 relates to TWC's denial of Appellants' partial transfer applications and their corresponding request for an unemployment tax refund. But Appellants do not challenge on appeal the trial court's determinations that the partial transfer applications and corresponding refund request were properly denied. Because Appellants do not contest these determinations, Appellants cannot show they were harmed by the trial court's failure to compel discovery with respect to these issues. *See* Tex. R. App. P. 44.1(a); *Ford Motor Co.*, 279 S.W.3d at 666.

Finally, Appellants also sought to depose a TWC representative regarding TWC's answers to "all written discovery." This broad request does not support the conclusion that Appellants were harmed by the trial court's failure to grant their motion to compel. *See* Tex. R. App. P. 44.1(a); *Ford Motor Co.*, 279 S.W.3d at 666.

We overrule Appellants' third issue.

## CONCLUSION

We overrule Appellants' issues on appeal and affirm the trial court's judgment.


/s/    Meagan Hassan
Justice


Panel consists of Justices Wise, Jewell, and Hassan.


12