**FORD MOTOR COMPANY, Petitioner,**

v.

**Ezequiel CASTILLO, et al., Respondents.**

No. 06–0875.

Supreme Court of Texas.

Argued Feb. 5, 2008.

Decided April 3, 2009.

Craig A. Morgan, Attorney at Law, Michael W. Eady, Ronald D. Wamsted, Juan Alcala, Thompson, Coe, Cousins & Irons, L.L.P., Virginia K. Hoelscher, Brown McCarroll, L.L.P., Austin, TX, Eduardo R. Rodriguez, Jaime A. Saenz, Rodriguez, Colvin Chaney & Saenz, L.L.P., Brownsville, TX, Warren E. Platt, Gerald F. Giordano, Snell & Wilmer, L.L.P., Tucson, AZ, for Petitioner.

Juan A. Gonzalez, Ricardo Garza Benavides, Romero, Gonzalez & Benavides, LLP, McAllen, TX, Roger W. Hughes, Adams & Graham, L.L.P., Michael T. Kiesel, Harlingen, TX, Mark A. Cantu, Law Office of Mark A. Cantu, McAllen, TX, Ernesto Gamez Jr., Law Offices of Ernesto Gamez, Jr., Brownsville, TX, for Respondents.

Justice JOHNSON delivered the opinion of the Court.

Ford Motor Company and Ezequiel Castillo, the plaintiff in a products liability action, settled while the jury was deliberating. The settlement occurred after the presiding juror sent a note to the judge asking the maximum amount that could be awarded. Based on later discussions with jurors, Ford suspected that outside influence may have been brought to bear on the presiding juror. After Ford sought, but was refused, permission to obtain discovery on the outside influence question, it withdrew its consent to the settlement. Castillo sought summary judgment against Ford for breach of the settlement agreement. Ford's response renewed its request for discovery, but the trial court rendered summary judgment for Castillo on the breach of settlement agreement claim. We hold that the trial court erred by refusing to allow discovery on Castillo's action for breach of contract, including whether there was any outside influence on the jury. We reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

## I. Background

Ezequiel Castillo and other occupants of Castillo's 2001 Ford Explorer (collectively, "Castillo") sued Ford in a products liability action arising from an accident. The jury charge contained two liability questions: was there a design defect in the roof strength and was there a design defect in the vehicle's handling or stability. The jury began deliberating on a Friday, broke for the weekend, then continued deliberating on the following Monday. Deliberations were recessed on Tuesday because a member of the presiding juror's family became ill. When the jury resumed deliberations on Wednesday morning, the presiding juror sent a note to the court that asked, "What is the maximum amount that can be awarded?" The parties promptly settled.

The judge released the jurors and advised them that they could discuss the case with the attorneys and parties. The presiding juror left immediately, but other jurors stayed and voluntarily talked to Ford. The jurors told Ford that they had decided the first liability question (roof strength) in Ford's favor and were deliberating on the second liability question when the presiding juror sent the note. On the second liability question, eight jurors had voted in Ford's favor, two were undecided, and two had voted in Castillo's favor. Ford learned that some of the jurors were unaware of the presiding juror's note and that she sent the note over the objection of other jurors.

Ford filed a Motion to Delay Settlement in which it requested "it be allowed to take discovery, or that the Court independently undertake discovery, on the issue of outside influence in the drafting of this note." The motion was supported by four jurors'

affidavits, which described the course of the jury deliberations and the behavior of the presiding juror. At the hearing, Ford's attorney reiterated the discovery request:

> [I]t is to me something that should be of concern to the Court if there was any outside influence, and it may be that nothing will show up about it at all, but there's only one way to find out and that's to have either the Court do its own investigation and or the Court allow us to bring the jurors in and have a hearing in front of the Court and or to depose them and then come back to the Court with our findings and make a determination as to where we go from there.

The trial court denied Ford's Motion to Delay Settlement. Although the judge encouraged Ford's counsel to conduct its own investigation concerning the matter, he refused to "disturb the jury" absent specific evidence of misconduct.

Castillo filed a motion to enforce the settlement agreement. At the hearing on the motion, Ford's attorney stated that Ford was willing to proceed with the settlement and asked for two weeks to finalize the details. The trial court granted Ford's request for additional time and extended the payment date to November 5.

On November 2, Ford filed a motion asking the court to reconsider its order directing Ford to pay the settlement. In its motion, Ford stated that it had withdrawn its consent to the settlement. Ford urged that because it had withdrawn its consent to the entry of an agreed judgment, Castillo's only remedy would be to plead and sue on a breach of contract claim. Ford also asked the court to set aside the Rule 11 settlement agreement and grant a new trial, or in the alternative, to grant a mistrial based on juror miscon-

duct. Attached to Ford's motion were transcripts of interviews with ten jurors that had been conducted by private investigators.[1] Ford asserted that the settlement agreement should be set aside under the theory of mutual mistake because both parties acted under the mistaken belief that the presiding juror sent the note on behalf of the jury and that the jury had reached the issue of damages. The trial court denied both of Ford's motions and struck the juror interview transcripts on the grounds that they were unsworn and hearsay. The court found no showing of juror misconduct, mutual mistake, or other grounds to rescind the settlement agreement.

Ford did not fund the settlement, so Castillo filed a motion for summary judgment for breach of contract. Ford responded and urged that before moving for summary judgment, Castillo must first plead a claim for breach of contract and then proceed through the traditional course of litigation on that claim. Ford asserted that "[g]ranting summary judgment at this juncture, without allowing Ford an opportunity to conduct discovery, assert defenses, or have contested fact issues tried by a finder-of-fact will deny Ford all its rights as a litigant." Ford urged that it was entitled to conduct discovery to "determine the motivation of the presiding juror's actions and any outside influences that possibly swayed her." In its response, Ford referenced the four affidavits it had filed with its motion to delay the settlement agreement and argued that the affidavits raised fact issues on Ford's potential affirmative defenses. Castillo objected to the four affidavits on the grounds that they were impermissible under Texas Rule of Evidence 606 and Texas Rule of Civil Procedure 327(b) because

---

**1.** Ford ultimately submitted affidavits from four jurors and transcripts from interviews with ten jurors. None of these involved the presiding juror.

they contained testimony on matters that occurred during jury deliberations and portions of them constituted hearsay. The trial court sustained Castillo's objections, ordered the affidavits stricken, and granted Castillo's motion for summary judgment. Ford appealed.

The court of appeals affirmed. 200 S.W.3d 217. The court held that Ford waived any error regarding both the trial court's denial of its motion to delay and the discovery request in its response to Castillo's summary judgment motion. *Id.* at 227, 230. The appeals court also concluded that even if Ford had not waived error, any error would be harmless because Ford ultimately conducted its own investigation and gathered virtually all the evidence it sought to discover and failed to identify any evidence it would have uncovered through discovery procedures. *Id.* at 230–31. Ford disagrees with both holdings.

First, Ford asserts that the court of appeals erred by holding that Ford waived error as to its discovery requests. Next, Ford urges that the trial court erred in denying it the right to conduct discovery because Castillo's claim for breach of the settlement agreement is the same as any other claim for breach of contract and is subject to the same procedures, including discovery procedures, that apply to any other breach of contract claim. We agree with Ford.

## II. Discussion

### A. Standard of Review

■ We review a trial court's actions denying discovery for an abuse of discretion. *See TransAmerican Natural Gas Corp. v. Powell,* 811 S.W.2d 913, 917 (Tex. 1991). A trial court abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Joe v. Two Thir-*

*ty Nine Joint Venture,* 145 S.W.3d 150, 161 (Tex.2004).

### B. Preservation of Error

■ The court of appeals held that Ford failed to preserve error regarding the discovery requests it made in both its (1) motion to delay the settlement, and (2) response to Castillo's motion for summary judgment. 200 S.W.3d at 227, 230. As for Ford's request in the motion to delay settlement, the court of appeals determined that the trial court did not actually deny the requested discovery because it encouraged Ford to conduct its own informal investigation, which Ford did. *Id.* at 229. We conclude, however, that Ford's presentation and the trial court's response were sufficient to preserve error. The trial court clearly understood Ford's request and just as clearly refused to grant it: the court told Ford that it refused to disturb the jurors and offered Ford nothing more than encouragement in conducting an informal investigation. *See* TEX.R.APP. P. 33.1(a). Although Ford interviewed most of the jurors, there is a significant difference between interviewing witnesses and taking sworn testimony from them as is allowed in discovery. One difference is demonstrated by Castillo's hearsay objection to Ford's juror interview transcripts and the trial court's granting of it. *See* TEX.R. CIV. P. 203.6(b) (providing that a deposition may be used for any purpose in the same proceeding it was taken). Another difference is if a witness—such as the presiding juror—declines to voluntarily give an interview or sworn statement, compulsory process is available under discovery procedures to require the witness to attend and give testimony under penalty of perjury. *See* TEX.R. CIV. P. 176.6(a). Because the trial court denied Ford's request, Ford was unable to obtain discovery by compulsory process from the presiding juror whose conduct is directly at issue.

The court of appeals also held that even if the trial court denied the motion, Ford effectively withdrew its discovery complaint by sending the trial court "mixed messages" through its statement that it would comply with the trial court's order but then filing a motion to set aside the settlement agreement without a request for discovery. 200 S.W.3d at 229. However, we need not address the question of whether Ford waived or withdrew the requests for discovery it made before withdrawing its consent to the settlement agreement because after it withdrew its consent, Ford requested that it be allowed discovery in its response to the motion for summary judgment.

Finally, the court of appeals concluded that Ford also waived its discovery request in its response to Castillo's motion for summary judgment on the breach of a settlement agreement claim because Ford did not file either an affidavit explaining the need for further discovery or a verified motion for continuance. *Id.* at 226–27 (citing TEX.R. CIV. P. 166a(g), 251, 252, and *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex.1996)).

Texas Rule of Civil Procedure 166a(g) states that if a party opposing summary judgment files an affidavit stating that he or she cannot present the facts in support of his position, a trial court may order a continuance "to permit affidavits to be obtained or depositions to be taken or discovery to be had." In *Tenneco*, this Court reiterated that "[w]hen a party contends that it has not had an adequate opportunity for discovery before a summary judgment hearing, it must file either an affidavit explaining the need for further discovery or a verified motion for continuance." 925 S.W.2d at 646–47. But in the cases requiring a party to file an affidavit or a motion for continuance to preserve error, the parties had conducted formal discovery and were seeking time to con-

duct additional discovery. *See Joe,* 145 S.W.3d at 160–62; *Tenneco,* 925 S.W.2d at 647. Ford is not complaining that it needed more time for discovery—it is complaining that the trial court denied it *any* discovery on the breach of contract action. In its response to Castillo's summary judgment motion, Ford pled that granting summary judgment without allowing Ford an opportunity to conduct discovery would "deny Ford all its rights as a litigant," and that "[u]nder Texas law, Ford is entitled to conduct . . . pretrial discovery before enforcement of the settlement." A continuance in this situation would have served no purpose other than to delay the proceedings. Ford's response referenced the four juror affidavits and clearly notified the trial court of Ford's position: it was the same position Ford took when the trial court held a hearing and ruled that it would not allow jurors to be disturbed by discovery proceedings unless Ford could first show evidence of outside influence. Under these circumstances, Ford was entitled to take the trial court's rulings at face value. It was not required to re-file juror affidavits the trial court had already stricken or assert what the record demonstrates would have been a useless motion for continuance. By granting Castillo's motions to strike the juror affidavits and for summary judgment, the court implicitly denied Ford's request for discovery in Castillo's breach of contract suit.

The court of appeals also reasoned that if Ford had filed a motion for continuance, the trial court could have revisited its prior ruling and perhaps would have ordered a continuance to permit discovery. 200 S.W.3d at 227 n. 4. However, as we have noted above, the trial court had made its position clear, Ford restated its request for discovery on the new contract action in its response to Castillo's motion for summary judgment, there is no indication the trial court did not understand Ford's re-

quest, and requesting a continuance so the trial court can revisit a prior ruling is not required to preserve error. *See* TEX. R.APP. P. 33.1(a) (providing that to preserve error, a party must present a timely request, motion, or objection to the trial court stating the grounds to make the trial court aware of the complaint and obtain a ruling). The trial court had already ruled that discovery was not going to be allowed on the question of outside influence on the jury. Ford's response to Castillo's motion for summary judgment, in light of Ford's prior filings and presentations to the trial court and the trial court's rulings, sufficiently preserved Ford's complaint that the trial court improperly denied it the opportunity to conduct discovery.

### C. Availability of Discovery in the Claim for Breach of Settlement Agreement

■ Written settlement agreements may be enforced as contracts even if one party withdraws consent before judgment is entered on the agreement. *Padilla v. LaFrance,* 907 S.W.2d 454, 461 (Tex.1995). When consent is withdrawn, however, the agreed judgment that was part of the settlement may not be entered. *Id.* at 462. The party seeking enforcement of the settlement agreement must pursue a separate claim for breach of contract. *Id.*

Castillo urges that his motion to enforce the settlement agreement was sufficient as a pleading to support a judgment for breach of contract. *See* TEX.R. CIV. P. 301 ("The judgment of the court shall conform to the pleadings, the nature of the case proved and the verdict, if any . . . ."). Ford does not contend otherwise. Rather, Ford asserts that it was entitled to conduct discovery and develop its defenses regarding Castillo's breach of contract claim just as it would have been allowed to do for any breach of contract claim. We agree.

■ Like any other breach of contract claim, a claim for breach of settlement agreement is subject to the established procedures of pleading and proof. *Mantas v. Fifth Court of Appeals,* 925 S.W.2d 656, 658 (Tex.1996) (orig.proceeding) (per curiam). Parties are "entitled to full, fair discovery" and to have their cases decided on the merits. *Able Supply Co. v. Moye,* 898 S.W.2d 766, 773 (Tex.1995) (orig.proceeding); *see State v. Lowry,* 802 S.W.2d 669, 671 (Tex.1991) ("Only in certain narrow circumstances is it appropriate to obstruct the search for truth by denying discovery."). A trial court abuses its discretion when it denies discovery going to the heart of a party's case or when that denial severely compromises a party's ability to present a viable defense. *Able,* 898 S.W.2d at 772. The validity of a settlement agreement cannot be determined without "full resolution of the surrounding facts and circumstances." *Quintero v. Jim Walter Homes, Inc.,* 654 S.W.2d 442, 444 (Tex.1983). Because the trial court denied discovery, Ford was unable to develop facts relevant to the presentation of its defense. Therefore, the trial court abused its discretion by denying Ford the right to conduct discovery on the breach of settlement agreement claim.

Castillo further argues that Ford's request to conduct discovery was an insufficient reason to require the trial court to lift the agreed discovery deadlines. However, the discovery deadlines Castillo refers to pertain to Castillo's tort action against Ford, not his breach of contract claim. Because the claim for breach of a settlement agreement is a separate cause of action that arose subsequent to the deadlines Castillo references, the discovery deadlines pertaining to Castillo's tort action have no bearing on the breach of contract cause of action. *See Padilla,* 907 S.W.2d at 461–62.

### D. Did Ford Seek Discoverable Information?

■ Castillo asserts that the trial court did not abuse its discretion in denying Ford's discovery request because the evidence Ford sought to develop was immaterial as it did not bear on any proper defense to the breach of contract action.[2] Ford offers mutual mistake as one such potential defense. The parties disagree as to whether mutual mistake is applicable in this case, but a party is not required to demonstrate the viability of defenses before it is entitled to conduct discovery. Rather, a party may obtain discovery "regarding any matter that is not privileged and is relevant to the subject matter of the pending action." Tex.R. Civ. P. 192.3. The phrase "relevant to the subject matter" is to be "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial." *Axelson, Inc. v. McIlhany*, 798 S.W.2d 550, 553 (Tex.1990). The trial court's preemptive denial of discovery could have been proper only if there existed no possible relevant, discoverable testimony, facts, or material to support or lead to evidence that would support a defense to Castillo's claim for breach of contract. This record does not demonstrate such a situation.

Castillo further asserts that Ford's suspicion that discovery *might* uncover relevant evidence is insufficient to render the trial court's denial of discovery an abuse of discretion. We agree that in some cases the denial of more time to conduct discovery is not an abuse of discretion when the discovery "might have" raised a fact question. *Tenneco*, 925 S.W.2d at 647; *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex.1995). But in such cases, the parties had not been completely precluded by the trial court from conducting discovery to begin with. *See Tenneco*, 925 S.W.2d at 647. Rather, the facts in those cases were "sufficiently developed" and "all the relevant information [was] at hand." *Id.* In this case, facts and matters relevant to the question of outside influence were not developed and the question of whether follow-up discovery on the issue should be undertaken was foreclosed.

Castillo also cites *Texas Co. v. State*, 154 Tex. 494, 281 S.W.2d 83, 91 (1955), as support for the argument that discovery under these circumstances was immaterial, asserting that Ford was not entitled to rescind the contract as rescission is only allowed when the party seeking cancellation can restore the original status. *Id.* ("*[O]ne* seeking a cancellation of an instrument, with certain exceptions not pertinent here, must restore the original status . . . ."). Castillo argues that restoring the original status in this case—the original jury deliberating toward a verdict-is impossible. But the cases requiring a party to restore the original status refer to returning money or property received pursuant to the contract. *See, e.g., id.* at 91 ("[I]t was not beyond the power of the trial court to require Duval to do equity by returning the money it had received . . . ."); *Tex. Employers Ins. Ass'n v. Kennedy*, 135 Tex. 486, 143 S.W.2d 583, 585 (1940) ("The general equitable rule is that a plaintiff in a suit for the rescission or cancellation of a contract to which he is a party must return, or offer to return, any consideration which he has received under the contract."); *Gibson v. Lancaster*, 90 Tex. 540, 39 S.W. 1078, 1079 (1897) ("[I]f any part of the purchase price has been paid, in order to [obtain] a rescission the

---

**2.** Castillo also asserts that the trial court properly denied Ford's discovery request in its motion to delay settlement because Ford had not withdrawn its consent to settle at that time so any discovery would have been an improper "fishing expedition." However, Ford reasserted its request for discovery after it withdrew its consent to the settlement.

money so paid must be tendered by the seller to the purchaser."). The rule is one of justice, designed to ensure that parties do not repudiate an agreement while retaining benefits received by reason of the agreement. *See Tex. Co.,* 281 S.W.2d at 91. We decline to extend the rule to a case such as this. First, Ford has not unfairly benefitted by receipt of tangible benefits that in equity should be returned in order for it to assert an equitable remedy. Any benefits Ford received could just as well be said to have been received by Castillo. Neither party knows whether the jury would have eventually found for Ford or Castillo and, if for Castillo, what amount of damages would have been awarded. Both parties were at risk by allowing the jury to continue deliberating-that is why they settled. Further, the rule is an equitable one. *Kennedy,* 143 S.W.2d at 585. Equitable rules by necessity are flexible and adaptable. *See Johnson v. Cherry,* 726 S.W.2d 4, 8 (Tex.1987). In this instance, facts have been disclosed that raise a legitimate question about the integrity of the trial process. It would be an anomalous application of the Court's equitable powers for those powers to be exercised to preclude inquiry into possible outside influence on jurors deliberating a verdict. We refuse to so apply an equitable doctrine.

### E. Discovery as to Jury Deliberations

■ Castillo next cites Texas Rule of Civil Procedure 327(b) and Texas Rule of Evidence 606 in support of his position. Rule 327 is found in the "New Trials" subchapter of the Rules of Civil Procedure and is entitled "For Jury Misconduct." It provides:

a. When the *ground of a motion for new trial,* supported by affidavit, is misconduct of the jury or of the officer in charge of them, or because of any communication made to the jury, or that a juror gave an erroneous or incorrect answer on voir dire examination, the court shall hear evidence thereof from the jury or others in open court, and *may grant a new trial* if such misconduct proved, or the communication made, or the erroneous or incorrect answer on voir dire examination, be material, and if it reasonably appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party.

b. A juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from *the verdict* concerning his mental processes in connection therewith, except that a juror may testify whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

TEX.R. CIV. P. 327 (emphasis added). Rule of Evidence 606(b) is entitled "Competency of Juror as a Witness" and provides:

Upon an inquiry into *the validity of a verdict or indictment,* a juror may not testify as to any matter or statement occurring during the jury's deliberations, or to the effect of anything on any juror's mind or emotions or mental processes, as influencing any juror's assent to or dissent from the verdict or indictment. Nor may a juror's affidavit or any statement by a juror concerning any matter about which the juror would be precluded from testifying be admitted in evidence *for any of these purposes.* However, a juror may testify: (1) whether any outside influence was im-

properly brought to bear upon any juror; or (2) to rebut a claim that the juror was not qualified to serve.

Tex.R. Evid. 606(b) (emphasis added).

Noting that both rules provide jurors may not testify about matters or statements made during jury deliberations, Castillo urges they apply to protect the jury's deliberations from all discovery. But, by their plain language, the rules apply to motions for new trials, reasons jurors voted for or against verdicts, and inquiries into the validity of verdicts or indictments. Tex.R. Civ. P. 327(b); Tex.R. Evid. 606(b). Even when those types of issues are involved, the rules specifically allow jurors to testify about outside influence brought to bear on any of them. Tex.R. Civ. P. 327(b); Tex.R. Evid. 606(b).

In this case, there was no verdict. Ford is not seeking discovery to impeach a verdict or to take testimony of jurors as to their votes on a verdict. And although the net effect of Ford's success in having the settlement agreement set aside will be a new trial, Ford is not asserting error in the trial court's denial of discovery as to a motion for new trial. So, although rules 327(b) and 606 do not strictly apply here, the policies inherent in those rules are implicated by this record and the positions of the parties. We have previously articulated some reasons underlying the prohibition of unfettered probing into jury deliberations: (1) keeping jury deliberations private to encourage candid discussion of a case, (2) protecting jurors from post-trial harassment or tampering, (3) preventing a disgruntled juror whose view did not prevail from overturning the verdict, and (4) protecting the need for finality. *See Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 366–67 (Tex.2000). Not all these reasons apply when no attempt is

being made to impeach a verdict, but the overarching principles are the same any time discovery is sought as to what occurred during jury deliberations. Jurors are summoned to court to do public service and they should not be subjected to unfettered post-trial proceedings regardless of whether their deliberations resulted in a verdict. Discovery involving jurors will not be appropriate in most cases, but in this case there was more than just a suspicion that something suspect occurred—there was some circumstantial evidence that it did.

Once the trial court discharges them, jurors are not prohibited from discussing what took place during deliberations. But there is a difference between jurors choosing to talk about their service and their being compelled to do so in discovery depositions and court hearings. We believe the better policy, in general, is to conform discovery involving jurors to those matters permitted by Rule of Civil Procedure 327 and Rule of Evidence 606. That is, discovery involving jurors should ordinarily be limited to facts and evidence relevant to (1) whether any outside influence was improperly brought to bear upon any juror, and (2) rebuttal of a claim that a juror was not qualified to serve.[3] And although we have determined that the trial court abused its discretion by entirely depriving Ford of discovery on the breach of contract claim, it remains within the trial court's discretion to reasonably control the limits of discovery and the manner in which the discovery may be obtained. *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (per curiam).

### III. Exclusion of Juror Affidavits

Ford asserts that the trial court erred by sustaining Castillo's objections and

---

**3.** We express no opinion about discovery or matters involving the breach of contract claim

other than discovery involving jurors.

striking the four juror affidavits it initially filed in conjunction with its motion for new trial and which it referenced in its opposition to Castillo's motion for summary judgment. Ford was entitled to discovery on Castillo's separate breach of contract claim regardless of the admission or contents of the affidavits. *See Quintero,* 654 S.W.2d at 444 (noting that when a settlement agreement is enforced in a new action for breach of contract, the validity of the settlement agreement cannot be determined without "proper pleadings and full resolution of the surrounding facts and circumstances"). The affidavits might be useful to the trial court in setting parameters and procedures for discovery, but because Ford did not need the affidavits to be entitled to at least some type of discovery on the breach of contract claim, we do not reach the issue of whether the trial court erred by excluding the affidavits.

## IV. Harmful Error

 If the trial court abuses its discretion in a discovery ruling, the complaining party must still show harm on appeal to obtain a reversal. *See* TEX. R.APP. P. 44.1(a). Harmful error is error that "probably caused the rendition of an improper judgment" or "probably prevented the appellant from properly presenting the case to the court of appeals." *Id.*

The court of appeals determined that even if the trial court erred, its error was harmless because Ford collected virtually all the evidence it sought to discover and failed to identify what type of evidence it would have obtained and presented if the trial court had granted its motion to delay. 200 S.W.3d at 230–31. It held that these considerations indicate the trial court's denial of Ford's request for discovery did not harm Ford. *Id.* at 231. We disagree.

 First, while Ford interviewed some of the jurors, it did not have the opportunity to question the presiding juror

while she was under oath and required to respond under penalty of perjury. *See, e.g.,* TEX.R. CIV. P. 176.6, .8 (requiring a nonparty to comply with a discovery subpoena subject to being held in contempt of court); TEX.R. CIV. P. 199.5(b) (requiring a person whose deposition is taken to be placed under oath); TEX. PENAL CODE § 37.02 (providing that it is a criminal offense to make a false statement under oath). Additionally, when discovery is denied and because of the denial the evidence sought does not appear in the record, determining harm from the denial is impossible and the party is prevented from properly presenting its case on appeal. *See Tom L. Scott, Inc. v. McIlhany,* 798 S.W.2d 556, 558 (Tex.1990) (orig.proceeding) ("[T]he protective order shields the witnesses from deposition and thereby prevents the evidence from being part of the record. Therefore, it would be impossible to determine on appeal if the denial were harmful error."); *Jampole v. Touchy,* 673 S.W.2d 569, 576 (Tex.1984) (orig.proceeding). The lack of direct evidence about whether the presiding juror was subjected to outside influence probably prevented Ford from properly presenting its case on appeal. Accordingly, the trial court's abuse of discretion in denying discovery was harmful. *See* TEX.R.APP. P. 44.1(a).

## V. Conclusion

The trial court committed harmful error by denying Ford the opportunity to conduct discovery on Castillo's claim for breach of the settlement agreement. We reverse the court of appeals' judgment and remand the case to the trial court for further proceedings consistent with this opinion.

Justice WAINWRIGHT filed a concurring opinion.

Justice WAINWRIGHT, concurring, joined by Justice MEDINA.

I join the Court's opinion and write separately to highlight an additional reason supporting the decision and to emphasize the limited circumstances in which I believe the Court's opinion authorizes targeted discovery related to the actions of jurors.

In this case, Ford Motor Company and Castillo were prompted to settle their products liability lawsuit by a note from the jury room to the trial judge asking: "What is the maximum amount that can be awarded?" The judge and the parties subsequently learned that the note did not come from the *jury*, but rather appears to have come from a *juror*, before Ford had been found liable in the jury's deliberations. The damages question was conditioned on a liability finding, and the jury would not have had to discuss damages unless it found Ford liable. There is evidence that the presiding juror either did not tell some jurors about the note or ignored objections of other jurors prior to sending it to the judge. There are two potential reasons for the presiding juror's action. One potential reason is the juror had an agenda, possibly prompted or guided by outside agents, and attempted to influence the result in the case improperly. The other is that a well-meaning juror sought to have her question answered during deliberations, albeit without the permission of the rest of the jury. The concrete risk that the first possibility motivated the question from the jury room is the reason the Court allows discovery in this case.

The parties, their attorneys, and the trial court reasonably assumed that the note signed by the presiding juror was not coming from a single juror, but rather the jury as a whole. Rule 285 of the Texas Rules of Civil Procedure [1] provides that the jury may communicate with the court verbally or in writing through the presiding juror. However, neither Rule 285 nor other procedural rules set the parameters for when questions may be sent by the jury to the judge. And the rules of procedure do not require that all jurors be aware that a juror submitted a question to the court. The participants in trials in Texas courts presume, and reasonably expect, that a note coming from the jury room represents the concerns (if not the opinions) of at least a majority of jurors. *See* Tex.R. Civ. P. 285 (permitting communications between "the jury" and the court "either verbally or in writing"). Other jurisdictions provide more guidance. *See, e.g.,* KEVIN F. O'MALLEY, JAY E. GRENIG, & HON. WILLIAM C. LEE, Federal Jury Practice and Instructions § 103.50 (6th ed. 2006) ("[I]f *you need to communicate with me during your deliberations, you may send a note to me through the marshal or bailiff, signed by one or more jurors.").* [2]

---

1. Texas Rule of Civil Procedure 285 provides:

 The jury may communicate with the court by making their wish known to the officer in charge, who shall inform the court, and they may then in open court, and through their presiding juror, communicate with the court, either verbally or in writing. If the communication is to request further instructions, Rule 286 [relating to the procedure for providing the jury with further instruction "touching any matter of law"] shall be followed.

2. *Accord* 1ST CIR. PATTERN CRIM. JURY INSTR.(1997); 7TH CIR FED. JURY INSTR.—CIVIL 1.33 (2008); 8TH CIR. CIV. JURY INSTR. 3.06 (2005); 9TH CIR. CIV. JURY INSTR. 3.2 (2007) (all providing instructions for jury notes, requiring that each note be signed by one or more jurors); *see also* 10TH CIR.CRIM. PATTERN JURY INSTR. 1.43 (2005) ("If you [the jury] want to communicate with me at any time during your deliberations, please write down your message or question and give it to ... [the bailiff] ..., who will bring it to my attention.").

The Court should set parameters for when the jury may send questions to the judge about the case during deliberations.[3] The rules of procedure and the instructions to the jury should be amended to specify that only the jury can send questions about the deliberations to the judge during deliberations. At a minimum, the entire jury should know that a question about deliberations is being sent to the judge. This will preclude an individual juror or a group of jurors from sending a question to the judge under circumstances that suggest, as in this case, that the question was from the jury.

When improper outside influence is exerted on a juror, or a juror tries to manipulate the outcome of a dispute, both parties are misled, and the integrity of the jury trial is subverted. The Texas Constitution, the Government Code, the Rules of Civil Procedure, and our case law all recognize that the parties to a civil case have a right to a fair trial, including an impartial and untainted jury. *Golden Eagle Archery, Inc. v. Jackson*, 24 S.W.3d 362, 374 (Tex.2000) (discussing "guarantees of the right to a fair and impartial jury trial in Article I, Section 15 and Article V, Section 10 of the Texas Constitution"); Tex. Const. art. I § 15 ("The right of trial by jury shall remain inviolate. The Legislature shall pass such laws as may be needed to … maintain its purity and efficiency."); Tex. Gov't Code § 62.105(4) (disqualifying from jury service any person who "has a bias or prejudice in favor of or against a party in the case"); Tex.R. Civ. P. 327(a) (providing for a new trial when jury misconduct exists); *see also Hyundai Motor Co. v. Vasquez*, 189 S.W.3d 743, 749 (Tex.2006) (recognizing the constitutional right to a trial by a "fair and impartial jury"); *id.* at 768 (Medina, J., dissenting)

(noting that an "improperly impaneled jury is also akin to the denial of one"); *Tex. Employers' Ins. Ass'n v. McCaslin*, 159 Tex. 273, 317 S.W.2d 916, 919 (1958) (noting that juror bias and misconduct "have never been regarded lightly by the Texas courts"). The fact that the parties in this case attempted to settle before the jury returned a verdict does not dilute their substantive right to a pure and efficient jury.

Just as this Court cannot allow to stand a favorable verdict obtained by one party due to possible jury misconduct, *e.g., Tex. Employers' Ins. Ass'n*, 317 S.W.2d at 918, it should not enforce a settlement agreement if it is prompted by impermissible outside influence on a jury member. The rule we pronounce today is necessary for the integrity of trial by jury and crucial for litigants to trust in the twelve individuals empaneled as the triers of fact. Castillo would have been entitled to the same limited discovery if he had entered into a meager settlement following the reading of a juror note, potentially prompted by improper influence, asking, "What is the minimum amount of damages we can award?" Both plaintiffs and defendants rely upon a jury system devoid of outside influence and manipulation. *See id.* at 920 (noting that when a juror has been subjected to improper influence, it is "often impossible for that juror to maintain an impartial attitude between the litigating parties. And this is true whether the juror is prejudiced in favor of or against the party guilty of the improper act.").

The discovery permitted by the Court in such situations is proper, but it is limited. Questions from the jury room are not definite declarations of where the jury stands in its deliberations. In fact, many jury

---

**3.** This is not to suggest that individual jurors cannot communicate with the judge about other important matters, such as a single parent advising the judge that she received a call from a school nurse to tell her that her daughter is very sick.

instructions caution the jurors not to communicate how their votes stand numerically. *See, e.g.,* 10TH CIR.CRIM. PATTERN JURY INSTR. 1.43 ("I caution you, however, that with any message or question you might send, you should not tell me any details of your deliberations or indicate how many of you are voting in a particular way on any issue."); *accord* 8TH CIR. CIV. JURY INSTR. 3.06; O'MALLEY, § 103.50 (similarly warning jurors not to disclose votes in written questions). If the parties merely misread an implied message from a jury note, settle based on that note, and later discover that the jury may have come out the other way had it been allowed to reach a verdict, there is no automatic claim for recision of the settlement contract on mutual mistake grounds, and it remains difficult for the doors to the jury room to be opened for discovery of impropriety or external influence. But when there is specific evidence to suggest that a juror may have been improperly influenced by outside agents, the integrity of the jury trial process requires that the adversely affected parties be entitled to targeted formal discovery to investigate the alleged misconduct. The discovery in this case may show no such improper external influence, but under the circumstances presented, I agree that the trial court should prudently and cautiously tailor discovery to protect one of the important guarantors of our constitutional liberties—the jury.