# IN THE SUPREME COURT OF TEXAS

════════════

No. 15-0591

════════════

IN RE NATIONAL LLOYDS INSURANCE COMPANY,
WARDLAW CLAIMS SERVICE, INC. AND IDEAL ADJUSTING, INC., RELATORS

════════════════════════════════════════════

ON PETITION FOR WRIT OF MANDAMUS

════════════════════════════════════════════

JUSTICE JOHNSON, joined by JUSTICE LEHRMANN and JUSTICE BOYD, dissenting.

Relators (collectively, National Lloyds or the company) designated Scot Doyen, an attorney representing them in these lawsuits, to testify regarding attorney's fees the homeowner–plaintiffs seek to recover. The question posed by the parties and ruled on by the trial court is whether information about his fees, expenses, and billing information, as well as that of other attorneys representing National Lloyds in the suits is discoverable. National Lloyds maintained in the trial court and now maintains in this Court that the information is both irrelevant and privileged, either as attorney-client communications or attorney work product. It has done so despite not making a record by producing any documents for examination. The trial court disagreed as to relevance, but wisely authorized—and directed—National Lloyds to respond to the discovery requests after redacting privileged information from any documents produced.

This Court, addressing an issue not raised by the parties, says the homeowners used improper discovery methods by using interrogatories and requests for production of documents. It follows that

up by saying that the methods would not have mattered anyway because the information is not relevant. The first reason the information is irrelevant, says the Court, is because National Lloyds has disavowed any intent to use its attorney's fees as a measure for challenging the plaintiffs' claims. The second reason is because whatever relevance the information might have is slight when compared to competing concerns such as undue prejudice, confusion of the issues, and abusive discovery practices. Thus, the Court agrees with National Lloyds and determines that the trial court abused its discretion by directing even the limited discovery it ordered.

I disagree and would deny relief.

## I. Standard of Review

Generally, parties may obtain discovery "regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." TEX. R. CIV. P. 192.3(a); *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009). Trial courts are afforded broad discretion in determining and controlling the scope of discovery. *See In re Am. Optical Corp.*, 988 S.W.2d 711, 713 (Tex. 1998). Trial court rulings regarding discovery are reviewed for abuse of discretion. *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014). There is no presumption that documents are privileged, and the party resisting the discovery bears the burden of pleading and proving an applicable privilege. *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223, 225 (Tex. 2004). Denial of discovery is proper only if there is "no possible relevant, discoverable" material to support, or lead to evidence that would support, claims or defenses of a party. *Ford Motor Co.*, 279 S.W.3d at 664.

2

## II.  Discussion

### A.  Methods of Discovery

National Lloyds designated Doyen, whose firm is one of those representing it in the pending cases, as an expert witness on attorney's fees.  After Doyen testified in a similar-type case and gave opinion testimony as to the plaintiff's attorney's fee request, based in part on his personal knowledge from representing a defendant in the case, the homeowners sought permission to serve interrogatories and requests for production regarding, as to each case, the time Doyen and his firm spent on the case and the firm's fees and expenses billed to and paid by National Lloyds.  They sought the same information regarding all the lawyers representing National Lloyds in the cases.  National Lloyds objected that the requested discovery was "overly broad and seeks information that is both irrelevant and protected by the attorney-client and work-product privileges."  *Ante* at ___.  A special master heard the dispute.  National Lloyds neither offered testimony nor produced any documents for examination by the special master or trial court.  The special master recommended, and the trial court ordered, that National Lloyds respond to the discovery requests as modified by the court, except it specified in its order that "specific records may be redacted for content protected by an appropriate privilege."

National Lloyds did not assert in the trial court that the homeowners improperly requested discovery by using interrogatories and requests for production.  It did not assert in the court of appeals that the trial court abused its discretion by authorizing discovery by means of interrogatories and requests for production instead of requests for disclosure, depositions, and reports as permitted by Rule 195.  *See* TEX. R. CIV. P. 195 (entitled "Discovery Regarding Testifying Expert Witnesses").

3

Nor has it made that argument here. The issue of whether the homeowners used proper discovery methods when National Lloyds did not make that challenge is not an issue the trial court had a duty to raise and rule on sua sponte. *Compare, e.g.*, *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 103 (Tex. 2012) ("Subject matter jurisdiction cannot be waived or conferred by agreement, can be raised at any time, and must be considered by a court sua sponte."). We do not have a duty to sua sponte raise the issue, either. *Id.* To the contrary, under this record we should do as the trial court did and limit ourselves to ruling on the issues presented by the parties.

In my view, the trial court did not abuse its discretion by addressing only the issues presented by the parties and not granting relief on grounds National Lloyds did not urge. *See McKinney v. Nat'l Union Fire Ins. Co.*, 772 S.W.2d 72, 75 (Tex. 1989) ("[T]he objecting party must assume the burden of establishing its privilege, immunity or *other objection* to the discovery request." (emphasis added)). Moreover, interrogatories and requests for production of documents are appropriate for discovering information related to Doyen as a person with knowledge of relevant facts regarding attorney's fees in cases in which he has participated in trial preparation, as is discussed more fully below. National Lloyds should not get to convert a witness from one with knowledge of relevant facts into solely an expert witness simply by designating the witness as an expert. And the trial court would not have abused its discretion by considering Doyen as a fact witness as well as an expert for discovery purposes—even if National Lloyds had argued he was not a fact witness, which it has not.

In light of the foregoing, I disagree with the Court's conclusion that "[b]ecause the homeowners chose not to use Rule 195's permissible discovery methods to request insurer's expert

4

information, the trial court erred insofar as it relied on Rule 192.3(e) in determining the scope of discovery." *See ante* at ___.

## B. Relevance

Going beyond the issue of methods of discovery, the Court concludes that the trial court abused its discretion by ordering National Lloyds to respond to the following discovery requests because they did not seek relevant information:

Interrogatories:

> (1) State the hourly rate of any and all attorneys who have provided legal services to this Defendant *in this case*;
> (2) State the total amount billed by each law firm providing legal services to this Defendant *in this case* up to and including the time of trial; and
> (3) State the total amount of reimbursable expenses incurred by any law firm providing legal services to this Defendant *in this case* up to and including the time of trial.

Requests for Production:

> (1) Produce all billing invoices received by Defendant and/or any of the firms the named attorneys are affiliated with or employed by, *in connection with this case*;
> (2) Produce all payment logs, ledgers, or payment summaries showing all payments paid to Defendants' attorneys and/or any of the firms that the named attorneys are affiliated with or employed by, *in connection with this case*;
> . . .
> (4) Please produce all documents that show the flat rate, if any, being paid to Defense Counsel and/or any of the firms that the named attorneys are affiliated with or employed by, *in connection with their services on this case*; and
> (5) Please produce all documents related to audits of the billing and/or invoices of Defense Counsel and/or any of the firms that the named attorneys are affiliated with or employed by, which were performed on behalf of Defendant in regards to the attorney services received by Defendant.

5

(emphasis added). The record clarifies that Request for Production number five is limited to documents in the particular case in which discovery is sought.

The amount of reasonable and necessary attorneys' fees to which the plaintiffs are entitled, if any, will be answered by the factfinder—in these cases, presumably a jury, as jury demands have been made. *Transcontinental Ins. Co. v. Crump*, 330 S.W.3d 211, 230 (Tex. 2010) ("In general, the reasonableness of statutory attorney's fees is a jury question." (quoting *City of Garland v. Dall. Morning News*, 22 S.W.3d 351, 367 (Tex. 2000))). The discovery was sought only after Doyen had both been designated to testify in these cases and had testified in another case in opposition to a plaintiff's attorney's fee request. And there can be no doubt that if Doyen testifies, his testimony will be in opposition to the fees requested by the homeowners: trial lawyers do not call witnesses to testify in *support* of the opposing party's position.

During the discovery hearing the homeowners' attorneys explained that Doyen's testimony in the prior, similar-type case prompted the discovery requests here. In that case he gave opinion testimony based in part on personal knowledge from his own participation in the case. The homeowners' desire for information is understandable, given that when Doyen was cross-examined in the earlier case about the amount of time and fees he and his firm billed for handling the case, he could not recall details of those matters. Given that previous experience, the homeowners' lawyers reacted rationally: they sought specific information and records with which to arm themselves to test Doyen's testimony and opinions should his recollection again falter, or his memory as to the firm billings be incomplete. Moreover, just in case there were other firms involved in representing National Lloyds in any of these matters, the plaintiffs' discovery requests inquired about those firms,

6

also. For if litigation tasks in a case are split among several firms, a true picture of the amount of time spent and fees billed by attorneys representing National Lloyds can only be presented by disclosure of the time and billings on the case from all the firms performing services.

When a witness testifies based on personal knowledge, even in part, matters within that witness's personal knowledge, subject to other exclusionary rules of evidence, become relevant and fall within the scope of cross examination. TEX. R. EVID. 602, 611(b); *see also Reid Rd. Mun. Util. Dist. No. 2 v. Speedy Stop*, 337 S.W.3d 846, 850–52 (Tex. 2011). There is no dispute Doyen has personal knowledge of his own firm's billing rates and at least part of the activities and time spent in litigating the cases by both his firm and the plaintiffs' lawyers. That surely includes personal knowledge of, or familiarity with, the complexity of the issues and the time various activities took or reasonably should have taken; the attorney experience level appropriate to litigate the case; the amount of time necessary to prepare for the various activities such as hearings, discovery requests and responses; and very likely other facts and factors affecting the reasonableness and necessity of the attorney's fees sought. *See Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818–19 (Tex. 1997) (setting out a non-exhaustive list of factors to be considered when determining whether an attorney's fees request is reasonable). His designation as an expert witness does not preclude his also being a fact witness and being examined as such with respect to the attorney's fees question. *See Reid Rd.*, 337 S.W.3d at 850–52. If a witness with knowledge of relevant facts about a contested matter such as the attorney's fee issue is called to testify, even as an expert, it is not subject to debate that the witness is subject to cross examination, including cross examination to test his credibility, biases (if any), and the bases for his testimony. *See* TEX. R. EVID. 611(b) ("A witness

7

may be cross-examined on any relevant matter, including credibility."); *Davidson v. Great Nat'l Life Ins. Co.*, 737 S.W.2d 312, 314 (Tex. 1987); *Goldberg v. Kelly*, 397 U.S. 254, 269 (1970). Those are all matters the jury will be entitled to consider in weighing Doyen's testimony if the cases are tried and he testifies; certainly information reflecting on them is discoverable.

The Court says that

> [U]nder [these] circumstances, (1) compelling en masse production of a party's billing records invades the attorney work-product privilege; (2) the privilege is not waived merely because the party resisting discovery has challenged the opponent's attorney-fee request; and (3) such information is ordinarily not discoverable.

*Ante* at ___ (citing TEX. R. CIV. P. 192.5(b)). But the quoted language does not apply. Here, the trial court did not order National Lloyds to produce its billing records en masse, nor does anyone assert that a privilege has been waived by the company's challenging the plaintiffs' attorney's fees request. To the contrary, the special master recommended, and the trial court specifically ordered, that privileged information did not have to be disclosed—National Lloyds was to redact such information before producing its records. Further, no one claims the information is ordinarily discoverable. But it is no ordinary situation for a party's trial attorney to be designated as a testifying expert to dispute the opposing party's attorney's fee request—at least, it has not been. Things may well change after this case issues.

Following its determination that some of the requested information is protected by the work-product privilege, a determination with which I do not disagree, the Court turns to whether the requests for hourly rates, total amounts billed, and total reimbursable expenses seek discoverable information. The Court notes that this question relates to the scope of discovery and that the proper

scope "extends to any unprivileged information that is 'relevant to the subject matter' of the pending action, even if inadmissible at trial, so long as the information sought 'appears reasonably calculated to lead to the discovery of admissible evidence.'" *Ante* at ___ (quoting TEX. R. CIV. P. 192.3(a)). But the Court then says:

> To the extent factual information about hourly rates and aggregate attorney fees is not privileged, that information is generally irrelevant and nondiscoverable because it does not establish or tend to establish the reasonableness or necessity of the attorney fees an opposing party has incurred.

*Ante* at ___ (citing TEX. R. EVID. 401; TEX. R. CIV. P. 192.3). I disagree. First of all, the information clearly tends to establish the reasonableness and necessity of attorney's fees National Lloyds has incurred in each case. And the information sought, at a minimum, *might* be relevant to both the reasonableness and necessity of the plaintiffs' attorney's fees in each case to which the defendant's fees apply.

While there are certainly times when counsel's experience, the roles undertaken by counsel, and varying motivations make a direct comparison of time spent on a case and fees charged for it inapt, there are just as certainly times when circumstances in particular cases might make a comparison highly appropriate. *See El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 766 (Tex. 2012) (Hecht, J., concurring). When a party designates the attorney representing it in a case to testify and dispute another party's fee request, the designation implies that the attorney will rely on his own experience in trying and billing cases comparable to the one in which he is designated to testify. If the attorney testifies and mitigating factors make a fee comparison between the parties inapplicable, then objections can be lodged based on the status of the evidence at the time the attorney testifies.

*See* TEX. R. EVID. 611(b) (providing that "[a] witness may be cross-examined on any relevant matter, including credibility."); TEX. R. EVID. 401 (defining "relevant evidence" as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable). In any event, the attorney will have an opportunity to address the subject and make any necessary clarifications during re-direct examination. And what better exemplar could there be of comparing apples to apples than comparing attorney activities in the very case in which the fees are sought? *See El Apple I*, 370 S.W.3d at 766. The trial court apparently decided that this might be such a case. In my view the trial court did not abuse its discretion by that decision and by allowing the limited discovery it ordered.

Further, the trial court could have, in its discretion, considered the information sought as being relevant for cross examination of lawyer Doyen regarding the credibility of his opinions and testimony. Witness credibility is important regarding contested issues, and attorney's fees are no different. *See Howsley & Jacobs v. Kendall*, 376 S.W.2d 562, 565 (Tex. 1964). The Texas Rules of Evidence expressly recognize that witnesses may be cross examined on their credibility. TEX. R. EVID. 611(b). Thus, information used to impeach the credibility of a witness, even an attorney testifying about another party's fees, is relevant, as the plaintiffs argued to the special master:

> We believe that we're entitled to know how much the Defendants spend on attorneys' fees and the number of hours that they billed for, in order to counter the arguments and testimony that we heard [from Doyen in the previous trial].

The Court gives several reasons for concluding that the requested information is not relevant. First, it says that an opposing party may freely choose to spend more or less than would be "reasonable" in comparison to the requesting party. *Ante* at ___. But deciding what is a reasonable

10

fee for a case is a jury question. Certainly, a party has the right to spend whatever it chooses on a case. But attorneys for both sides are professionally obligated to charge reasonable fees. TEX. DISCIPLINARY RULES PROF'L CONDUCT 1.04(a). Beyond that, that party's billing choices should not preclude the party whose attorney's fees it is contesting from discovering information about the time spent and fees charged on a case by a testifying witness who has been part-and-parcel of representing the contesting party in the suit. This holds especially true when, as happened with Doyen, the designated witness has already demonstrated in previous trial testimony in a similar case that he could not recall specifics regarding his firm's time, activities, and billings for the case.

Second, the Court says that comparisons between attorney's fees of plaintiffs and defendants are inapt because differing motivations of the parties impact the time spent, rate charged, and skill required. *Ante* at ___. That may be true to some extent, but the fact remains that all the lawyers are representing clients in the same lawsuit and doing much of the same work, such as filing pleadings, attending the same depositions and hearings, doing pretrial orders and briefing, preparing to examine and cross examine the same pool of witnesses, working on the same jury charge, and preparing to argue the same case to the same jury. There is necessarily symmetry in a great deal of the activity undertaken by attorneys representing clients in the same lawsuit, even though they represent opposing parties. That symmetry is relevant for cross-examination purposes if Doyen testifies regarding such activities and is critical of the homeowners' attorney's fees request as to those activities.

Third, the Court says that the tasks and roles of counsel on opposite sides of a case vary fundamentally, so even in the same case, the legal services rendered to opposing parties are not

11

"fairly characterized" as similar. *Ante* at ___. I disagree. There are some differences in the typical activities undertaken by counsel for opposing parties in a lawsuit, but most of the activities are of the same general nature. And if they are not, the testifying witness will have an opportunity to explain the differences. In any particular case the issues generally become apparent early on. From that point, preparation for the parties generally entails similar types of activities—even though likely not exactly the same activities—as set out above, and others such as researching points of law that might arise, conferring with and corresponding with the client regularly, interviewing witnesses, attending mediation, and preparing witnesses for trial. Any differences go to the weight of the evidence, not to whether there is some relevancy between the level and types of activities and time spent by the attorneys for each side. At the least, there is enough similarity and relevance for the trial court to have determined that the limited discovery it ordered was warranted.

Finally, the Court says that a single law firm's fees and rates do not determine the "customary" range of fees in a general locality for similar services. *See Arthur Andersen & Co.*, 945 S.W.2d at 818 (noting that the fee customarily charged in the locality is a factor to be considered in determining the reasonableness and necessity of attorney's fees). True. But saying that a single firm's fees and rates do not *determine* a customary or reasonable fee is not the same as saying that firm's fees and rates are not *relevant* to the question. To the extent that "customary" fees are in issue, an opposing party's fees and rates are certainly *some* evidence of the customary fees and rates in that locality. As such, they are at least relevant to what a customary or reasonable fee would be.

In sum, it is one thing to say that evidence of National Lloyds' attorneys' time and fees in a particular case is inadmissible in that case when an opposing party is seeking attorney's fees in the

case.  Admissibility will depend on the evidence and what has transpired at trial before such evidence is offered, and the purpose for which it is offered.  *Cf. In re E.N.C.*, 384 S.W.3d 796, 805 (Tex. 2012); *see also* TEX. R. EVID. 401 (requiring that the evidence be of a "fact . . . of consequence in determining the action").  But it is quite another thing to say that the trial court abused its discretion by determining evidence of the time and fees of National Lloyds' attorneys is discoverable to the limited extent it ordered here.

### C.  And Further . . .

The Court asserts that production of any part of an attorney's file, even redacted billing information, would conflict with our holding in *National Union Fire Insurance Co. v. Valdez*, in which we decided that requests for en masse production of an attorney's entire litigation file was improper because it called for disclosure of privileged, work-product materials.  *Ante* at ___ (citing *Nat'l Union Fire Ins. Co. v. Valdez*, 863 S.W.2d 458, 460 (Tex. 1993)).  Not so.  The requests for discovery in this case are not even close to the requests we considered in *Valdez*.  An attorney's entire file includes notes about attorney-client conferences, reports to clients, trial strategies and preparation, and case evaluation; just to mention a few areas and matters that are undisputedly privileged.  No one doubts that those materials "necessarily [reveal] the attorney's thought processes concerning the prosecution or defense of the case."  *See Valdez*, 863 S.W.2d at 460.

The requested billing information in this case is a narrow sliver of the entire file, and in *Valdez* we were careful to note that the decision "does not prevent a party from requesting specific documents . . . relevant to issues in a pending case, even though some or all of the documents may be contained in an attorney's file."  *Id.*  The information and documents sought here are limited,

13

specific, and unquestionably relevant to an issue in this case. The trial court's authorizing National Lloyds—by a very general and nonspecific order—to redact privileged information before producing documents, was fully adequate to protect privileged information absent National Lloyds demonstrating otherwise.

To the extent the Court implies that the homeowners seek to use the requested discovery to independently support their claim for attorney's fees, National Lloyds does not claim that they do. As the homeowners argued to the special master, the discovery was sought only after Doyen's designation as a witness regarding the homeowners' attorney's fees claim, and after he testified in opposition to the fee request of a homeowner in a different trial. As discussed, the homeowners say they only seek the information to prepare for cross examining Doyen. So, any discussion about using the fees National Lloyds' lawyers charged as proof of the homeowners' attorney's fees is misplaced.

Moreover, the discovery requests can hardly be excessively burdensome or a great expansion of the trial that will take place. First, National Lloyds did not claim that they are. Second, it is common knowledge among civil trial lawyers that insurance companies require regular, detailed billing invoices from their attorneys. Invoices generally set out, at the very least, the date, amount of time taken, and description of activity for which the company is being billed. That information is most likely either computer generated or transmitted to the company via paperless billing methods. Either way, or even in the event that the billing invoices are paper instead of electronic, the invoices and payments made in response will be readily and efficiently available on demand. It is also common knowledge in the industry that insurance companies may have the fee invoices of their attorneys audited, frequently by independent companies whose business it is to review attorney's fee

14

bills and report unusual or out-of-line time or activities to the auditing company's clients—indeed, the phrase "customary fee" comes to mind regarding such audits. *See Arthur Andersen & Co.*, 945 S.W.2d at 818. Assuming National Lloyds follows industry norms, the responses to discovery ordered by the trial court should take a nominal amount of time and effort, even including the time to redact privileged information as authorized by the trial court. And if National Lloyds does not follow industry norms, it did not mention it in the trial court, nor did it assert or offer evidence that producing the requested information and redacted documents would take an unusual or excessive amount of time, effort, or expense. In any event, if any such problems arise, they can be presented to the trial court for resolution.

As the Court explains, this situation has been brought about by National Lloyds' own litigation choice to designate its trial attorney to testify as an expert. *Ante* at ___ n.54 (noting that parties concerned about disclosing fees and expenses paid to trial counsel can designate another expert witness or withdraw the designation of trial counsel as a witness). What National Lloyds should not be able to do is have it both ways by using one of its trial attorneys to critique the time, fees, and other details of the homeowners' attorney's fees request, while screening from view its own attorneys' time and fees in the same case for the same or similar activities. The materials the trial court ordered discovered, at the very least, may lead to admissible evidence that many, if not most, jurors would consider relevant in weighing the testimony of a witness such as Doyen—how much time did the insurance company's lawyers spend on the case in regard to the items those lawyers criticize as to the homeowners' attorneys, and what did they and their insurance clients consider a reasonable fee for those efforts?

15

### III. Conclusion

The trial court's reasonably cautious approach as to what interrogatories must be answered and what discovery must be produced does not demonstrate an abuse of discretion. There is, at a minimum, possible relevance of the discovery sought to an element of the pending case. *See Ford Motor Co.*, 279 S.W.3d at 664. There simply has been no showing that National Lloyds' complying with the trial court's discovery order would result in undue prejudice or abusive discovery practices. It most certainly would not result in confusion of the issues—it is a discovery order, not a ruling on the admissibility of the information or documents sought.

I would deny mandamus relief. Because the Court does otherwise, I respectfully dissent.

_____

Phil Johnson
Justice

**OPINION DELIVERED:** June 9, 2017

16